United STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

THE NETHERLANDS INSURANCE COMPANY
and ARTHUR LANGE, INC.,

                    Plaintiffs,

    -against-

United SPECIALTY INSURANCE COMPANY,

                Defendant.

------------------------------------X

16 Civ. 7397

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/30/17

A P P E A R A N C E S:

       Attorneys for Plaintiffs

       JAFFE & ASHER LLP
       600 Third Avenue, 9th Floor
       New York, NY 10016
       By:  Marshall T. Potashner, Esq.
            David R. Shyer, Esq.

       Attorneys for Defendant

       TRAUB LIEBERMAN STRAUS & SHREWSBURY LLP
       Seven Skyline Drive
       Hawthorne, NY 10532
       By:  Craig L. Rokuson, Esq.
            Meryl R. Lieberman, Esq.

**Sweet, D.J.**

Plaintiffs The Netherlands Insurance Company ("Netherlands") and Arthur Lange, Inc. ("Lange") (collectively, the "Plaintiffs") have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment declaring that the defendant United Specialty Insurance Company ("United" or the "Defendant") owes Lange a duty to defend and indemnify in the action *Donizete Jose Defreitas v. Penta Painting & Decorating Corp., Arthur Lange, Inc., and Nikmar Contracting, Inc.* (the "Underlying Action") and that Netherlands' policy has an applicable excess "Other Insurance" provision. The Defendant has cross-moved for summary judgment pursuant to Rule 56 seeking a declaration that it owes no coverage for the Underlying Action. Based upon the facts and conclusions set forth below, the motion of the Plaintiffs is denied and the motion of the Defendant is granted.

## I.   Prior Proceedings

The complaint in the instant action was filed on September 22, 2016. The motion for partial summary judgment was submitted April 18, 2017, the cross-motion for summary judgment

1

was submitted May 2, 2017, and both motions were heard and marked fully submitted on May 31, 2017.

## II. The Facts

The facts have been set forth in the Plaintiffs' Local Civil Rule 56.1 Statement ("Pl.'s 56.1 Stmt.") and the Defendant's Response to Plaintiffs' Statement of Undisputed Material Facts and Counterstatement ("Def.'s 56.1 Stmt."). They are not in dispute except as noted below.

On or about September 5, 2013, the Underlying Action was commenced in the Supreme Court of the State of New York, County of Bronx. *See* Declaration of Michael Ince, executed April 6, 2017 ("Ince Decl.") ¶ 3. In the Underlying Action, Donizete Jose Defreitas ("Defreitas") seeks to recover damages for injuries he allegedly sustained on June 17, 2013, while he was in the course of his employment with Energy Paving, Inc. ("Energy") on a construction project at the premises located at 4 North Lake Road, Armonk, New York (the "Project"). *Id.* ¶ 4. Defreitas, in his Verified Complaint in the Underlying Action, alleges that he was injured in the course of his work on the Project when a wooden plank/elevated platform on which he was working collapsed, causing him to fall to the ground (the

"Accident"). *See* Ince Decl. *Id.*, Ex. 1. He also alleges that at the time of the Accident, Lange was the general contractor for the Project and retained Energy as subcontractor pursuant to written contract. *Id.* Defreitas asserts claims against Lange for negligence and violation of N.Y. Labor Law §§ 200, 240, and 241. *Id.* ¶ 8; Ex. 1. On December 8, 2016, the Underlying Action was transferred to the Supreme Court of the State of New York, County of Westchester, where it was assigned Index No. 68525/16. *See* Ince Decl., Ex. 2.

United denies any inference that the complaint in the Underlying Action identifies Energy as Defreitas' employer. Def.'s 56.1 Stmt. ¶¶ 2-5. United also denies that Lange is alleged to be both the general contractor and construction manager, and states that Defreitas alleges that all defendants to the Underlying Action retained Energy. *Id.* ¶ 4 (citing to Ince Decl., Ex. 1 ¶¶ 20, 32, 36, 52).

On or about December 13, 2012, Lange and Energy entered into a written agreement concerning work to be performed on the Project (the "Subcontract"). *See* Declaration of David R. Shyer, executed April 14, 2017 ("Shyer Decl."), Ex. 10. The Subcontract identifies Lange as "General Contractor" and Energy as "Subcontractor." *Id.* Pursuant to the Subcontract, Energy

agreed to perform "masonry walls, walkways and patios" work for the Project. *Id.* The Subcontract provides, in part, as follows concerning Energy's insurance procurement obligations for the Project:

> 4. Subcontractor shall maintain, or cause to be maintained, in full force and effect during the term of this Agreement, at its expense, Workers' Compensation Insurance, public liability insurance covering personal injury and property damage, and other insurance with minimum coverages as listed below. Such policies are to be in the broad form available on usual commercial terms and shall be written by insurers of recognized financial standing satisfactory to General Contractor. Except for Workers' Compensation, General Contractor shall be named as an additional insured on all such policies with the understanding that any obligations imposed upon the insured Subcontractor (including, without limitation, the liability to pay premiums) shall be the sole obligations of Subcontractor and not those of General Contractor. Notwithstanding anything to the contrary in this Agreement, Subcontractor irrevocably waives all claims against General Contractor for all losses, damages, claims or expenses resulting from risks commercially insurable under the insurance described in this Section 4. The provisions of insurance by Subcontractor shall not in any way limit Subcontractor's liability under this Agreement.
>
> * * *
>
> Comprehensive General Liability, including Bodily injury, property damage and broad form contractual liability
>
> $2,000,000 aggregate
> $1,000,000 each occurrence
>
> * * *
>
> b) Each policy of insurance shall contain clauses to the effect that (i) such insurance shall be primary without right of contribution of any other insurance

carried by or on behalf of General Contractor with respect to its interests, (ii) it shall not be cancelled, including without limitation, for non-payment of premium, or materially changed or not renewed without thirty (30) days prior written notice to General Contractor, (iii) no act or omission of Subcontractor shall affect or limit the obligation of the insurance company to pay General Contractor the amount of any loss sustained and (iv) policies cannot contain residential work exclusion.

*Id.*

United issued Commercial General Liability ("CGL") policy, No. USA 4000300, with a policy period from September 2, 2013 to September 2, 2014, which it issued to Energy as Named Insured (the "United Policy"). *Id.*, Ex. 11. The United Policy has "Each Occurrence" limits of $1 million. *Id.* The United Policy provides claims-made and reported coverage, and only applies to claims "first made against the insured, and reported to [United]," during the policy period. *Id.*, Ex. 11 at p. United 0364. The claim at issue in the Underlying Action was made and reported to United during the policy period of the United Policy. *See* Ince Decl., Exs. 1, 5. The United Policy's insuring agreement provides, in part, as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * *

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
(2) The "bodily injury" and "property damage" arises out of "specifically covered operations"; and
(3) The "bodily injury" or "property damage" did not first occur before the Retroactive Date, if any, shown in the Declarations or after the end of the "Policy Term".

*Id.*, Ex. 11 at p. United 0364. The United Policy defines

"specifically covered operations" as follows:

"Specifically covered operations" means only work or operations, and such premises owned, leased, maintained or operated by the insured incidental or necessary to such work or operations that are specifically described and listed on the Specifically Covered Operations Endorsement (form CGL 1810) attached to this policy.

The United Policy includes a Specifically Covered Operations

Endorsement that provides as follows:

SCHEDULE

The following work and operations are included within the definition of "specifically covered operations":

Driveway and sidewalk paving

Coverage for classifications, operations or premises not shown above can only be covered if agreed to, in

writing, by us as evidenced by endorsement to this policy.

*Id.* Ex. 11 at p. United 0348. The United Policy includes an endorsement, entitled "Additional Insured – Owners, Lessees Or Contractors – Automatic Status When Required In Construction Agreement With You." This endorsement provides, in relevant part, as follows:

> A. Section II – Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

> Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

> 1. Your acts or omissions; or

> 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.

*Id.* Ex. 11 at p. United 0361. The United Policy defines the term "you", in part, as "the Named Insured shown in the Declarations." *Id.*, Ex. 11 at p. United 0364. The full text of the provision is: "Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." *See* Def.'s 56.1 Stmt. at p. 9.

The United Policy includes an endorsement entitled "Exclusion – Workers Compensation" (the "Workers Compensation Exclusion"). *See* Shyer Decl., Ex. 11 at p. United 0385. The Workers Compensation Exclusion provides, in part, as follows:

> This insurance does not apply to any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any other similar law.

> This exclusion also applies to any obligation of the insured under the workers' compensation statutes of any state arising out of the failure of the insured to exact from a contractor (or subcontractor if the insured is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

*Id.*, Ex. 11 at p. United 0385. The United Policy includes a Separation of Insureds provision that provides, in part, as follows:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

> * * *

> b. Separately to each insured against whom "claim" is made or "suit" is brought.

*Id.*, Ex. 11 at p. United 0379.

The United Policy includes an exclusion (the "Employee Exclusion"), the full text of which reads:

e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of any insured arising out of and in the course of:

(a) Employment by any insured; or

(b) Performing duties related to the conduct of any insured's business; or

(2) An "employee" of any subcontractor of any insured; or

(3) Any insured who is an owner, officer, partner, executive or other official in the insured company, organization or entity; or

(4) The spouse, child, parent, brother or sister of that "employee" or insured as a consequence of paragraph (1), (2) or (3) above.

This exclusion applies:

(1) Whether any insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Id.*, Ex. 11 at p. United 0366; Def.'s 56.1 Stmt. at pp. 11-12.


United admits all of these provisions of the Policy and also notes that "[t]he policy speaks for itself as to all terms, conditions, provisions and exclusions." Def.'s 56.1 Stmt. at pp. 7-10.

Netherlands issued Commercial General Liability ("CGL") policy, No. CBP 8367378, with a policy period from January 1, 2013 to January 1, 2014, to Lange as the first Named Insured (the "Netherlands Policy"). *See* Ince Decl., Ex. 3. The Netherlands Policy has "Each Occurrence" limits of $1 million. *Id.* The Netherlands Policy provides, in part, as follows:

> 4. Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> * * *
>
> b. Excess Insurance
>
> (1) This insurance is excess over:
>
> * * *
>
> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.
>
> * * *
>
> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
> (2) The total of all deductible and self-insured amounts under all that other insurance.

> We will share the remaining loss, if any, with any
> other insurance that is not described in this Excess
> Insurance provision and was not bought specifically to
> apply in excess of the Limit of Insurance shown in the
> Declarations of this Coverage Part.

*Id.* at p. PLTFS 128. The Netherlands Policy defines the term

"you" as "the Named Insured shown in the Declarations and any

other person or organization qualifying as a Named Insured under

this policy." *Id.* at p. PLTFS 118. The Netherlands Policy

provides, in part, as follows:


> c. Method Of Sharing
>
> If all of the other insurance permits contribution by
> equal shares, we will follow this method also. Under
> this approach each insurer contributes equal amounts
> until it has paid its applicable limit of insurance or
> none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit
> contribution by equal shares, we will contribute by
> limits. Under this method, each insurer's share is
> based on the ratio of its applicable limit of
> insurance to the total applicable limits of insurance
> of all insurers.

*Id.* at p. PLTFS 129.


By letter dated September 5, 2013 and mailed on

October 29, 2013, Netherlands tendered Lange's defense and

indemnification for the Underlying Action to Energy and its

broker. *See* Ince Decl., Ex. 4 ¶ 15. United admits that it

received the Netherlands letter dated September 5, 2013, but not until November 26, 2013. *Id.*, Ex. 5; Def.'s 56.1 Stmt. at p. 15. In the tender letter, Netherlands advised, in part: "Our investigation has revealed that Mr. Defreitas was an employee of Energy Paving when he was hurt on the job site." *See* Ince Decl., Ex. 4; Def.'s 56.1 Stmt. at p. 15.

On November 26, 2013, Netherlands separately provided United with a copy of the Verified Complaint in the Underlying Action and the Subcontract. *See* Ince Decl., Ex. 5. By email dated December 13, 2013, United advised that it "does appear that [Lange] will qualify as an additional insured" under the United Policy, but United was "unsure on what basis or terms." *Id.*, Ex. 6. United states that the email speaks for itself as to its full text. Def.'s 56.1 Stmt. at p. 16.

By letter dated December 27, 2013, United denied coverage and disclaimed any duty to defend or indemnify Lange for the Underlying Action. *See* Ince Decl., Ex. 7. United's disclaimer was based solely on the Employee Exclusion and the Workers Compensation Exclusion. *Id.* United admits this and notes that it also included the following language in its disclaimer:

> • As information continually presents itself, should at any time you feel there is new information which

may alter this decision on coverage, please notify us immediately, and we will take steps to review the Information and our coverage position. Please understand that United Specialty does so under the express reservation of its rights to raise additional applicable policy provisions and defenses.

• We reserve the right to disclaim coverage for any and all valid reasons under the terms of the policy whether cited in this letter or not.

• The foregoing in no way constitutes, nor should it be considered as a waiver or relinquishment by United Specialty or Century of all other defenses available to it under the terms and conditions of the Policy, and neither anything in this document nor any act of United Specialty or Century is to be construed as a waiver of any known or unknown defense. Additionally, the foregoing in no way restricts or limits United Specialty or Century from relying upon and asserting other facts and grounds that are, or may become available to it.

Def.'s 56.1 Stmt. at pp. 16-17. United, in its disclaimer, states, in part, as follows:

As of the date of this letter, Energy is not a named party to the lawsuit. Mr. Ince's letter indicates that their investigation has revealed that the plaintiff, Donizete Jose Defreitas ("Defreitas") was an employee of Energy at the time of the accident. My telephone call with Vivian Oliviera of Energy on December 10, 2013 and documentation she emailed to me confirms that Defreitas was an employee of Energy who was in the course and scope of his employment with Energy at the time of the accident, which is the subject of the lawsuit filed by Defreitas against Arthur and other defendants.

*See* Ince Decl., Ex. 7. United states that its December 27, 2013 declination letter speaks for itself as to its full text. Def.'s 56.1 Stmt. at p. 17.

On or about November 3, 2016, United served and filed an Answer to the Complaint in the instant action. *See* Shyer Decl., Ex. 9. United, in its Answer, for the first time asserted a defense to coverage for Lange for the Underlying Action based on the exclusion set forth in the Specifically Covered Operations Endorsement. *Id.* United denies this, stating that its letter dated December 27, 2013 reserved United's right to deny coverage for any and all valid reasons under the terms of the policy whether cited in the letter or not. Def.'s 56.1 Stmt. at p. 17.

In its counterstatement of material facts, United asserts the following facts, which are not disputed unless noted: United issued Commercial Lines Policy USA 4000300 to named insured Energy for the policy period September 2, 2013 to September 2, 2014 (the "Policy"). Affidavit of Susan Weller ("Weller Aff.") dated May 1, 2017, Ex. A. The Policy contains the following Employer's Liability Exclusion:

e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of any insured arising out of and in the course of:

(a) Employment by any insured; or

(b) Performing duties related to the conduct of any insured's business; or

(2) An "employee" of any subcontractor of any insured; or

(3) Any insured who is an owner, officer, partner, executive or other official in the insured company, organization or entity; or

(4) The spouse, child, parent, brother or sister of that "employee" or insured as a consequence of paragraph (1), (2) or (3) above.

This exclusion applies:

(1) Whether any insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Id.* at USIC 0109. The Policy contains the following Specifically Covered Operations Endorsement:

SPECIFICALLY COVERED OPERATIONS ENDORSEMENT

This endorsement modifies insurance provided under the following: CONTRACTORS LIMITED CLAIMS MADE GENERAL LIABILITY COVERAGE PART

SCHEDULE

> The following work and operations are included within
> the definition of "specifically covered operations":
>
> Driveway and sidewalk paving
>
> Coverage for classifications, operations or premises
> not shown above can only be covered if agreed to, in
> writing, by us as evidenced by endorsement to this
> policy.

*Id.* at USIC 0133.

On or about September 5, 2013, Donizete Jose Defreitas filed a Verified Complaint against Penta Painting & Decorating Corp., Arthur Lange and Nikmar Contracting Corp. in the Supreme Court of the State of New York, County of Bronx (the "Complaint"). Weller Aff., Ex. B. In the Complaint, Defreitas brings suit against each defendant as a general contractor, construction manager and/or contractor at 4 North Lake Road, Armonk, New York (the "Premises"), seeking recovery for injuries allegedly sustained on June 17, 2013 when "he was caused to be injured when a wooden plank/elevated platform upon which he was working collapsed propelling him to the ground." Defreitas also alleges violations of Sections 200 and 241 of the New York Labor Law and Rule 23 of the Industrial Code. *Id.* at ¶¶ 64-69. The Complaint does not contain any allegations identifying Mr. Defreitas' employer. *Id.*

Michael Ince, on behalf of Netherlands, tendered Lange's defense and indemnity of the Underlying Action to Energy by letter dated September 5, 2013 (the "Netherlands Tender"). Weller Aff., Ex C. The Netherlands Tender was not addressed or copied to United. *Id.* Mr. Ince later admitted that the Netherlands Tender was incorrectly dated and was actually sent to Energy Paving on October 29, 2013. Weller Aff., Ex. D.

The Netherlands Tender provides that:

> Our investigation has revealed that Mr. Defreitas was an employee of Energy Paving when he was hurt on the job site. According to the contract between Arthur Lange Inc. and Energy Paving Inc., you are to defend and indemnify and name Arthur Lange Inc. as an additional insured on your policy. We are requesting that you turn this over to your insurance carrier so that they may take over handling of this matter so that we do not need to file suit against your company and seek cost associated with the defense of this matter.

Weller Aff., Ex. C. The Netherlands Tender does not reference any enclosures. *Id.*

On November 26, 2013, United was first provided notice of the Underlying Action via the Netherlands Tender. Weller Aff., Ex. E. On that same day, Lana Hartpence, Claims Processing Specialist on behalf of United, emailed Mr. Ince, acknowledging

receipt of the tender letter, requesting a copy of the Complaint, and advising Mr. Ince that United's offices "will close at 3pm on Wednesday, November 27th and will not reopen until Monday, December 2nd." Weller Aff., Ex. F. Also that day, Susan Weller, Litigation Specialist on behalf of United, emailed Mr. Ince, acknowledging that United first received notice of the Underlying Lawsuit "today," and requesting a copy of the lawsuit and contract between Lange and Energy. Weller Aff., Ex. G.

Mr. Ince provided the Complaint and requested contract via email on November 26, 2013, and in that email, acknowledged that the tender was sent to Energy on October 29, 2013. *Id.* Ms. Weller replied to Mr. Ince's email providing the Complaint and contract that day, advising him that she was out of the office the following week, and would "most likely" review Mr. Ince's submissions "the week of December 9th." *Id.* Mr. Ince responded to that email stating "I told my counsel that we will wait until the end of December" to institute any action against Energy, to allow United to review the matter.

On November 27, 2013, Ms. Weller telephoned Energy three times at the telephone number listed on Energy's application of insurance, receiving no answer. Weller Aff., Ex. H. On December 2, 2013, United states that it sent a contact

letter to Energy, requesting that it contact Ms. Weller. Weller Aff., Ex. I. Plaintiffs dispute this statement as written, admitting only that the letter was dated December 2, 2013 and not necessarily that it was sent that day. *See* Plaintiffs' Response to United's Local Civil Rule 56.1 Statement ("Pl.'s Resp. 56.1 Stmt.") at p. 5.

On December 10, 2013, Energy Paving contacted Ms. Weller and provided United with a Worker's Compensation EC-669 form identifying Energy as Defreitas' employer at the time of the accident at issue in the Underlying Action. Weller Aff., Ex. J. On December 13, 2013, Ms. Weller emailed Mr. Ince, acknowledging that Lange is an additional insured under the Policy, but stating that she was "unsure on what basis or terms." Ms. Weller also informed Mr. Ince that she would be out of office until December 26th. Weller Aff., Ex. K. On December 27, 2013, Ms. Weller reviewed the materials provided and determined that no coverage was available to Energy or Lange. Weller Aff., Ex. L. Plaintiffs deny this statement insofar as the claims note does not set forth the date on which Ms. Weller reviewed the materials. Pl.'s Resp. 56.1 Stmt. at p. 6.

On December 27, 2013, United issued a letter entitled "Coverage Declination." Weller Aff., Ex. M. The Coverage

19

Declination Letter was addressed to Mr. Ince and Energy, and was copied to Bam Brokerage, Inc., Demetriou General Agency, Inc., Mr. Defreitas' attorney Joseph Bove, Arthur Lange, and the two co-defendants (Penta Painting and Nikmar Contracting). *Id.* The Coverage Declination Letter acknowledges that Lange qualifies as an additional insured, but that Lange is "subject to all policy language, exclusions and endorsements that comprised the policy." *Id.* United further noted that "Mr. Ince's letter indicates that their investigation has revealed that the plaintiff, Donizete Jose Defreitas ("Defreitas") was an employee of Energy at the time of the accident. My telephone call with Vivian Oliviera of Energy on December 10, 2013 and documentation she emailed to me confirms that Defreitas was an employee of Energy who was in the course and scope of his employment with Energy at the time of the accident, which is the subject of the lawsuit filed by Defreitas against Lange and other defendants." *Id.* United denied coverage under the Workers Compensation and Employer's Liability Exclusions to the Policy, advising that "based on these exclusions, there is no coverage for Energy [Paving] or Arthur [Lange] or any other individual or entity claiming coverage under Energy [Paving]'s policy for the above cited lawsuit." *Id.*

The Coverage Declination contains the following language:

> As information continually presents itself, should at any time you feel there is new information which may alter this decision on coverage, please notify us immediately, and we will take steps to review the information and our coverage position. Please understand that United Specialty does so under the express reservation of its rights to raise additional applicable policy provisions and defenses.
>
> We reserve the right to disclaim coverage for any and all valid reasons under the terms of the policy whether cited in this letter or not.
>
> The foregoing in no way constitutes, nor should it be considered as a waiver or relinquishment by United Specialty or Century of all other defenses available to it under the terms and conditions of the Policy, and neither anything in this document nor any act of United Specialty or Century is to be construed as a waiver of any known or unknown defense. Additionally, the foregoing in no way restricts or limits United Specialty or Century from relying upon and asserting other facts and grounds that are, or may become available to it.

*Id.*

Plaintiffs served their Responses and Objections to United's First Request for Production of Documents in this matter on January 27, 2017. Declaration of Meryl Lieberman dated May 2, 2017 ("Lieberman Decl."), Ex. A. Plaintiffs' document production included Defreitas' July 28, 2014 deposition transcript from the Underlying Action. Lieberman Decl., Ex. B.

During his deposition, Defreitas testified that he was injured while traversing a platform from the roof at the subject premises to an 8' to 10' retaining wall that he was "facing." *Id.* Plaintiffs dispute this characterization of Defreitas' testimony, citing to the Declaration of David R. Shyer in Opposition and Further Support, dated May 17, 2017 ("Shyer Opp. Decl."), Ex. 3.

United served a notice to take depositions of Plaintiffs in this action and Plaintiffs did not serve any notice to take depositions. Lieberman Decl., Ex. C.

In its Answer in the Underlying Action, Lange asserts as an affirmative defense "[t]hat the Plaintiff's sole and exclusive remedy is under the Worker's Compensation Law." Lieberman Decl., Ex. D. In the Underlying Action, Lange provided in discovery an Affidavit of No Excess Insurance Coverage. Lieberman Decl., Ex. E.

## III. The Applicable Standard

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

While the moving party bears the initial burden of showing that no genuine issue of material fact exists, *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005), in cases where the non-moving party bears the burden of

23

persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "It is ordinarily sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party . . . must come forward with evidence that would be sufficient to support a jury verdict in his favor"). In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## IV. United Timely Disclaimed Coverage Based on the Employer's Liability Exclusion

The sole issue presented with regard to United's denial of coverage pursuant to the Employer's Liability Exclusion is whether United's denial of coverage was timely. The Plaintiffs do not dispute that Defreitas was an employee of Energy, nor do they assert that, by its terms, the Employer's Liability Exclusion is not applicable to the instant situation[1]; rather, Plaintiffs argue that United waived applicability of

---

[1] Even if Plaintiffs made such an argument, it would be unavailing, as a recent case in this Court reiterated. *See Netherlands Ins. Co. v. U.S. Underwriters Ins. Co.*, No. 14CIV3568NSRJCM, 2015 WL 9295745, at *4, 6 (S.D.N.Y. Dec. 17, 2015), *reconsid. denied*, No. 14CIV3568NSRJCM, 2016 WL 297736 (S.D.N.Y. Jan. 21, 2016) (holding that "the use of the phrase 'any insured' rather than 'the insured'" – the same language used in the Employer's Liability Exclusion here – meant that the exclusion was "not limited to injuries sustained by the employees or contractors of *one* insured party"). "Numerous cases in state and federal courts in New York have upheld this or similar exclusions as clear and unambiguous." *Id.; see Nautilus Ins. Co. v. Barfield Realty Corp.*, 2012 U.S. Dist. LEXIS 148714 (S.D.N.Y. 2012) ("However, where, as here, the language of the exclusion refers to "*any insured*" it should be read to supersede the separation of insureds language in order both to effectuate its plain meaning, and to avoid rendering the clause a nullity.") (emphasis in original); *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 179 (S.D.N.Y. 2003) *aff'd*, 88 F. App'x 441 (2d Cir. 2004) ("[t]he endorsement could not be clearer"); *Moleon v. Kreisler Borg Florman General Const. Co., et al.*, 304 A.D.2d 337, 340 (N.Y. App. Div. 1st Dep't 2003) ("New York courts have held that employee exclusionary clauses containing the same or similar language are plain and unambiguous and that such a clause applies to exclude coverage to an additional insured where, as here, the main action is brought against such additional insured by the employee of a named insured.").

this Exclusion by failing to properly and timely deny coverage pursuant to N.Y. § 3420(d)(2), which provides as follows:

> (2) If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

The duty to disclaim as soon as is reasonably possible is triggered "once the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 801 N.E.2d 835, 837 (N.Y. 2003); *see also In re Arbitration between Allcity Ins. Co. & Jimenez*, 581 N.E.2d 1342, 1343 (N.Y. 1991) ("The timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage.") (internal quotations and citations omitted). "An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay." *First Fin. Ins. Co.*, 801 N.E.2d at 839. An insurer can satisfy this burden by proving, for example, that "the delay was reasonably related to the completion of a necessary, thorough, and diligent investigation" by the insurer

26

into "issues that [would] affect the decision on whether to disclaim." *Quincy Mut. Fire Ins. Co. v. Uribe*, 45 A.D.3d 661, 662 (App. Div. 2d Dep't 2007); *see also Mount Vernon Fire Ins. Co. v. Harris*, 193 F.Supp.2d 674, 677 (E.D.N.Y. 2002) ("New York courts have also consistently recognized that a prompt, good faith investigation of the claim by the insurer may justify a delay that would normally be deemed unreasonable absent explanation."); *First Fin. Ins. Co.*, 801 N.E.2d at 839 ("While Insurance Law § 3420(d) speaks only of giving notice 'as soon as is reasonably possible,' investigation into issues affecting an insurer's decision whether to disclaim coverage obviously may excuse delay in notifying the policyholder of a disclaimer.").

In contrast, an insurer cannot justify a delay where the basis for disclaimer "was or should have been readily apparent before the onset of the delay." *First Fin. Ins. Co.*, 801 N.E.2d at 839. In such cases, the insurer's explanation for the delay will be deemed "insufficient as a matter of law." *Id.* Similarly, "[a] delay will be found unreasonable in situations where the additional investigation was found to have no bearing on the initial reasons for denial of coverage and, quite obviously, when no reason at all has been given for the delay." *Ostrowski v. Am. Safety Indem. Co.*, No. 07-cv-3977 (DLI)(VVP), 2010 WL 3924679, at *4 (E.D.N.Y. Sept. 30, 2010). Nevertheless,

only in "exceptional case[s]" should the question of whether a delayed disclaimer was reasonable be decided as a matter of law; in most cases, this question is a question of fact to be determined at trial. *Discover Prop. & Cas. Ins. Co. v. Pathmark Stores, Inc.*, No. 09-CV-1529 JFB WDW, 2010 WL 4365561, at *5 (E.D.N.Y. Oct. 27, 2010); *Hartford Ins. Co. v. Nassau Cnty.*, 389 N.E.2d 1061, 1062-63 (N.Y. 1979); *see also Ostrowski*, 2010 WL 3924679, at *4 ("The question of unreasonableness becomes a question of fact, or if extreme, of law, depending on the circumstances of the case which make it reasonable for the insurer to take more or less time to make, complete, and act diligently on its investigation of its coverage or breach of conditions in its policy.") (internal quotations and citations omitted).

While "[t]he issue of whether a disclaimer was unreasonably delayed is generally a question of fact," *Mount Vernon Hous. Auth. v. Pub. Serv. Mut. Ins. Co.*, 699 N.Y.S.2d 905 (App. Div. 1999) (citing cases), certain unexplained delays or justifications for delays can be ruled upon as a matter of law. "The New York Court of Appeals has held that unexplained delays of sixty-two and forty-eight days are unreasonable as a matter of law." *NGM Ins. Co. v. 52 Liberty*, No. 7:09-CV-09003, 2010 WL 6501383, at *4 (S.D.N.Y. Dec. 6, 2010) (citing cases). This

Court, applying New York law, has recently held a delay of forty days to be reasonable. *See Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 605-06 (S.D.N.Y. 2016), *appeal withdrawn sub nom.* (Oct. 31, 2016). Another case in this Court held that a time period between notice and disclaimer of fifty-five days was reasonable as a matter of law where the insurer "submitted proof that the delay in disclaiming was based upon its prompt, diligent and good faith investigation with respect to coverage." *U.S. Underwriters Ins. Co. v. 614 Constr. Corp.*, 142 F. Supp. 2d 491, 496 (S.D.N.Y. 2001), *aff'd* 23 Fed. App'x 92 (2d Cir. 2002); *see also Mount Vernon Fire Ins. Co.*, 193 F. Supp. 2d at 677-78 (holding that a fifty-day delay to conduct an investigation was reasonable as a matter of law). There is no exact number of days that can be said to be reasonable or unreasonable; the determination of whether a delay is reasonable is fact-specific and ultimately focuses on whether the investigation was "used as a dilatory tactic" or was made promptly and in good faith. *Id.*

The facts here demonstrate that United's delay in disclaiming coverage was reasonable. United, through its representative Susan Weller, acknowledged that it received notice of the Underlying Action on November 26, 2013 by email from Michael Ince. Weller Aff., Ex. G. Ms. Weller reached out to

Mr. Ince representative for a copy of the Complaint and the Subcontract that day. Though Ms. Weller told Mr. Ince that she would likely begin the investigation on December 9th, as she would be out of office until then, *see* Weller Aff., Ex. H, she initiated the investigation the following day: On November 27, 2013, Ms. Weller telephoned Energy three times at the telephone number listed on Energy's application of insurance, receiving no answer. Weller Aff., Ex. H. Shortly thereafter, with a letter dated December 2, 2013, United sent a contact letter to Energy asking it to contact Ms. Weller. Weller Aff., Ex. I.

On December 10, 2013, Energy contacted Ms. Weller and provided United with a Worker's Compensation EC-669 form identifying Energy as Defreitas' employer at the time of the accident at issue in the Underlying Action. Weller Aff., Ex. J. From December 13 to December 26, Ms. Weller was out of the office, and informed Mr. Ince of her absence. On December 27, 2013, United sent Netherlands its Coverage Declination Letter. Weller Aff., Ex. M.

The record demonstrates that United took about one month to disclaim coverage including a prompt investigation. This time period is well within what has been found reasonable by this Court and other courts applying relevant law. Moreover,

United's investigation spanned a time period that included two major national holidays – one of which typically spans two business days – which would be reasonably expected to delay ordinary office work. Additionally, though the email from Mr. Ince notified United of a possible ground for disclaimer, the Complaint did not. *See Matter of Prudential Prop. & Cas. Ins. Co.*, 213 A.D.2d 408, 408 (N.Y. 1995). Still, United came forward with adequate evidence establishing that, only one day after receipt of Mr. Ince's email, the Complaint, and the Subcontract, it initiated its engagement in a reasonably prompt, thorough, and diligent investigation of the claim. Under the facts provided, even viewed in a light most favorable to the Plaintiffs, United's delay was timely as a matter of law.

Plaintiffs cite to *Squires v. Robert Marini Builders Inc.*, 293 A.D.2d 808 (N.Y. App. Div. 3d Dep't 2002), to support its contention that United's disclaimer based on the Employer's Liability Exclusion was untimely. In *Squires*, Charles Squires ("Squires"), an employee of subcontractor Thomas Davin ("Davin"), brought suit against general contractor Robert Marini Builders, Inc. ("Marini"), seeking damages for injuries sustained in the course of his work on the project at issue. Marini sought additional insured coverage from Utica First Insurance Company ("Utica"), Davin's CGL insurer. *Id.* at 808. On

March 22, 2000, Utica received a tender letter from Marini's

insurer, informing Utica of the nature and existence of Squires'

claim, together with copies of the Complaint and the Marini-

Davin subcontract. Utica, by letter dated May 3, 2000, denied

coverage for Marini based in part on an exclusion for injuries

to an insured's employee. *Id.* at 809-10. The Third Department of

the Appellate Division held that Utica's 42-day delay in

disclaiming coverage was unreasonable as a matter of law,

reasoning that:

> Despite Utica First's allegation that this notice was
> timely because of its need to investigate the claim
> before disclaiming, it is clear that the information
> required to decide whether or not to deny coverage was
> plaintiff's status as an employee of Davin and Davin's
> subcontract with defendant. Plaintiff's complaint and
> Davin's subcontract unambiguously provided this
> information. Significantly, Utica First does not
> allege that it had any reason to doubt the allegations
> of plaintiff's complaint. As a result, Utica First had
> the information necessary to immediately determine
> whether one or more of the policy exclusions applied,
> and the record does not support the claim that its 42
> day delay in disclaiming was reasonable.

*Id.* at 810. Thus, in *Squires*, the disclaimer was untimely where

the insurer had a reasonable basis for disclaimer upon receipt

of tender, and no investigation was necessary.

As in *Squires*, the only information required for

United to decide whether or not to deny coverage based on the

Employer's Liability Exclusion was Defreitas' status as an Energy employee and the Subcontract. However, here, the Complaint contained no allegations as to Defreitas' employment by Energy, and therefore United did not have "the information necessary to immediately determine whether [the Employer's Liability Exclusion] applied." *Id.* All it had was Mr. Ince's representation, *Squires* is inapposite.

United's delay of thirty-one days to disclaim coverage is reasonable as a matter of law given the "undisputed evidence that the insured conducted an immediate investigation" and in light of the fact that "New York courts have consistently held that an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage[; h]ence, where an insurer conducts an investigation into the basis for the underlying claim, courts have found that delays of up to two (2) months are reasonable as a matter of law." *U.S. Underwriters Ins. Co.*, 142 F. Supp. 2d at 495-96 (S.D.N.Y. 2001). Accordingly, United did not waive applicability of the Employer's Liability Exclusion.

## V. United Did Not Waive the Right to Raise the Specifically Covered Operations Endorsement

Plaintiffs argue that United has waived the right to raise the Specifically Covered Operations Endorsement because it was first raised by United as an affirmative defense in the instant action. United cannot waive the Specifically Covered Operations Endorsement because "where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable." *Albert J. Schiff Assocs. Inc. v. Flack*, 51 N.Y.2d 692, 698 (1980). Pursuant to the New York Court of Appeals' decision in *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185 (N.Y. 2000),

> [d]isclaimer pursuant to section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed.

Courts applying New York law have consistently held that limitations substantially similar to the Specifically Covered Operations Endorsement define the scope of coverage "in the first instance." In the recent case *Black Bull Contr., LLC v. Indian Harbor Ins. Co.*, 135 A.D. 3d 401 (N.Y. App. Div. 1st

Dep't 2016), for instance, the court found that, because the relevant endorsement "states the activities that *are* covered," the policy could not cover liability arising out of the non-covered activity "under any circumstances." *Id.* at 403 (emphasis in original); *see also Max Spec. Ins. Co. v. WSG Investors, LLC*, 2012 U.S. Dist. LEXIS 108564 (E.D.N.Y. Aug. 1, 2012) (denial under designated operations endorsement that limited coverage to interior carpentry and drywall and wallboard installation was not subject to § 3420(d)). Thus, the Specifically Covered Operations Endorsement is not subject to the timeliness requirements of New York Insurance Law § 3420(d)(2).

Additionally, when United issued its December 27, 2013 declination letter, it did so on the ground it knew applied while "reserv[ing] the right to disclaim coverage for any and all valid reasons under the terms of the policy whether cited in this letter or not." Weller Aff., Ex. M at p. USIC 216; *see Estee Lauder Inc. v. OneBeacon Ins. Group, LLC*, 62 A.D.3d 33, 355 (N.Y. App. Div. 1st Dep't 2009) ("Of course, an insurer may reserve the right to disclaim on such different or alternative grounds as it may later find to be applicable."); *see also Nat'l Rests. Mgmt. v. Exec. Risk Indem., Inc.*, 304 A.D.2d 387, 388 (N.Y. App. Div. 1st Dep't 2003) (insurer did not waive disclaimer on coverage when it initially disclaimed coverage on

a different ground than ultimately invoked where it "at all relevant times expressly reserved its right to disclaim coverage"). United was within its rights to raise the Specifically Covered Operations Endorsement upon receipt of information that it would apply.

Accordingly, United did not waive its right to raise the Specifically Covered Operations Endorsement.

## VI. Conclusion

Upon the facts and conclusions set forth above, the partial summary judgment motion of Plaintiffs is denied, and the summary judgment motion of United is granted.

It is so ordered.

**New York, NY**
**August 30, 2017**

_____
ROBERT W. SWEET
U.S.D.J.